### GRIFFITH et al. v. AMERICAN INDEMNITY CO.

#### No. 9641.

Court of Civil Appeals of Texas. Galveston.

Dec. 24, 1931.

Rehearing Denied Jan. 14, 1932.

Wynne & Wynne, of Kaufman, and Williams, Neethe & Williams, of Galveston, for appellants.

Terry, Cavin & Mills and Joyce Cox, all of Galveston, for appellee.

LANE, J.

On September 1, 1926, American Indemnity Company, a Texas corporation engaged in the writing of automobile insurance of various kinds, including public liability insurance, entered into a contract in writing with F. W. Griffith and Oscar Fields, doing business as Griffith & Fields, empowering said defendants to write such insurance in the city of Terrell and vicinity. In said contract, defendants agreed that they would "be governed in every respect by the rules, instruction and requirements of the Company." Said agents, defendants, also agreed that "any and all suits for any and every breach of said agreement may be instituted and maintained in any court of competent jurisdiction in Galveston County, Texas."

American Indemnity Company instituted this suit in a district court of Galveston county against F. W. Griffith and Oscar Fields, residents of Terrell in Kaufman county, Tex. In its petition, it alleged the instructions given by the plaintiff to said agents, in writing, specifically prohibited the writing of insurance for negroes. Notwithstanding these instructions, the said defendants executed on behalf of plaintiff a policy of insurance, dated December 27, 1927, insuring one Fred Harris, a negro, as follows:

Against loss by collision, against legal liability for damage to property of other persons not to exceed the sum of $1,000, and against liability for personal injuries to third parties, in the sum of $5,000, where only one person should be injured, and in the maximum sum of $10,000 where more than one person should be injured. Said agents transmitted the premium on said policy to the said plaintiff at its home office in Galveston, and never informed plaintiff that the assured was a negro; that said policy provided, among other things, that the insurance thereof should extend to any person driving said car other than the assured, when said person was driving with the consent and/or permission of said assured; that a suit was instituted against Fred Harris and Will Fair and American Indemnity Company in the district court of Dallas county, Tex., Sixty-Eighth judicial district, cause No. 80563-C by Mrs. Irma Malone, individually,

and as next friend for her minor children, Charles T. Malone, Evelyn Malone, and Bobbie Malone, suing for damages for the death of the husband of the said plaintiff, Mrs. Irma Malone, and the father of said other plaintiffs, caused by the negligent driving of the automobile belonging to Fred Harris, insured under said policy, driven by Will Fair, in the city of Dallas with the permission of said Fred Harris on July 15, 1928, said negligence resulting in a collision with the automobile in which the said husband of Mrs. Irma Malone was riding, causing his death; that American Indemnity Company obtained its dismissal from said cause; and Texas Employers Insurance Association intervened in said cause, seeking to obtain subrogation and reimbursement of the sums paid to Mrs. Irma Malone under the Workmen's Compensation Act of the state of Texas; that judgment was entered in said cause on the 26th day of July, A. D. 1929, awarding recovery to the plaintiffs in said cause against the defendants Fred Harris and Will Fair, which sum American Indemnity Company, under the said contract of insurance aforesaid, was forced to pay, and did pay on July 30, 1929; that the defendants were given every opportunity to defend said suit and to participate therein, but failed and refused to do so; that by reason of the premises, the defendants have caused loss to your petitioner by reason of this breach of, said contract in writing in the sum of $1,500 as alleged and in the further sum of $185.05 which plaintiff has had to pay for costs and for attorney's fees, which sum was paid on August 29, 1929, and that defendants, though often requested, have failed and refused and still fail and refuse to pay said amount of damages to your petitioner to its great damage in the sum of $2,000.

Defendants each duly filed their plea of privilege to be sued in the county of their residence; such plea being in manner and form as required by law. The plaintiff duly filed its plea, controverting the respective pleas of privilege filed by the defendants as follows:

"1. Plaintiff has filed a petition herein alleging that defendants herein made, executed and delivered to plaintiff a written contract by which they agreed to represent American Indemnity Company in the writing of various forms of insurance, and further agreed that they would 'be governed in every respect by the rules, instructions and requirements of the Company.' Defendants also agreed:

"'All payments contemplated to be made by the Agent to the Company under this agreement shall be made to the Company at its office in the City and County of Galveston, Texas, and any and all suits for any and every breach of said agreement may be instituted and maintained in any court of competent jurisdiction in Galveston County, Texas.'

"2. Plaintiff alleges that in truth and in fact defendants entered into said written obligation and did in fact violate instructions which they had contracted to obey, namely, by writing automobile liability insurance for a negro, one Fred Harris, said act constituting breach of contract and rendering the defendants liable to pay American Indemnity Company all damages sustained by said breach in Galveston County, Texas.

"3. The court has venue of this suit because defendants, O. P. Fields and F. M. Griffith, have obligated and bound themselves to perform all obligations incurred by them by reason of breach of said written contract, aforesaid, in Galveston County, in accordance with the provisions of Article 1995, Section 5, of the Revised Civil Statutes of Texas.

"Wherefore, premises considered, plaintiff prays that such plea of privilege be overruled."

Upon a hearing of the respective pleas of the parties, the plaintiff introduced in evidence the contract entered into between it and the defendants, wherein it was provided that the territory alloted to said agents shall consist of Terrell and vicinity.

Plaintiff also introduced in evidence its original petition, the pertinent parts of which we have above set out.

It also introduced in evidence the contract entered into between it and Griffith & Fields, which was made a part of its original petition. Those parts of said contract material to the issues here involved are as follows:

"The Agent shall be governed in every respect by the rules, instructions and requirements of the Company, and it is understood and agreed that such rules and instructions as are contained in the agency manual of the Company, together with such changes as may be made therein from time to time, as well as any instructions which may be given said agent by letter or otherwise by the Company are hereby made a part of this contract as fully as if they were set out at length herein.

"The agent shall keep an accurate record of all bonds and policies written or renewed by the Company through *them* and all premiums collected and said records, accounts and all other documents and correspondence, pertaining to the Company's business shall be considered the property of the Company, and shall be turned over to it on demand. * * *

"*All payments contemplated to be made by the Company under this agreement shall be made to the Company at its office in the City and County of Galveston, Texas, and any and all suits for any and every breach of said agreement may be instituted and main-*

*tained in any court of competent jurisdiction in Galveston."* (Italics ours.)

Plaintiff also introduced a policy of insurance issued in the name of plaintiff, by Griffith & Fields, as agents, to one Fred Harris, a negro, as the insured, whereby said Griffith & Fields made plaintiff the insurer of a certain automobile belonging to Fred Harris against direct loss or damage by other parties. The policy so issued indemnified the assured against legal liability for damage to the property of other persons to an amount not to exceed $1,000. The policy also provided:

"In consideration of an additional premium and subject to all conditions of this policy this assurance is extended to cover the assured's legal liability to other persons for the injury to or destruction of the property of such persons (including resultant loss of use of such property) and in addition thereto the legal expenses incurred by the assured with the consent of this Company in connection with such injury or destruction, resulting solely and directly from the ownership, maintenance or use of the automobile herein described, provided such injury or destruction occurs during the period covered by this policy, subject, however, to the following limitations and exclusions:

"(1) Property of the assured or in charge of the assured or any of his employees or carried in or upon the automobile described herein is excluded from this coverage.

"(2) This Company's liability for injury or destruction is limited to the actual cash value of the property destroyed at the time of its destruction and/or the actual cost of the suitable repair of the property injured, but in no case shall this Company be liable with respect to claims (including claims for loss of use) arising from one accident for more than $1,000.00 and in addition thereto the legal expenses incurred by the assured with the consent of the Company. * * *

"In consideration of an additional premium and subject to all the conditions of this policy this insurance is extended to cover the legal liability imposed by law upon the assured for damages on account of bodily injuries, including death at any time resulting therefrom, caused by the ownership, maintenance, or operation of the automobile described herein, accidentally suffered or alleged to have been suffered while this policy is in force, by any person or persons except (1) any liability under any Workmen's Compensation Agreement, Plan or Law, (2) by any employee of the assured who at the time of the injury is engaged in the operation, maintenance, or repair of the automobile insured hereunder, (3) by any employee of the assured during the course of his employment or arising out of it. * * * *"

And such policy, among other things, further provides:

"1. The Company hereby agrees to defend in the name of and on behalf of the assured any suits, even if groundless, brought against the assured to recover damages on account of such happenings as are provided in the Property Damage and Liability Peril Clauses herein and to pay irrespective of the limits of liability herein expressed all costs taxed against the assured in any legal proceedings defended by the Company, all interest accruing after entry of judgment upon such part thereof as shall not be in excess of the liability limits herein specified and the expenses incurred for such first medical aid as shall be imperative at the time of any accident together with all expense incurred by the Company growing out of the investigation of such an accident, the adjustment of any claim or the defense of any suit resulting therefrom. However, the Company reserves the right to settle or defend as the Company may elect any such claim or suit brought against the assured.

"6. The Insurance provided by 'The Property Damage Peril Clause' and the 'Liability Peril Clause' attached to this policy is so extended as to be available, in the same manner and under the same conditions as it is available to the named assured, to any person or persons while riding in or lawfully operating the automobile insured hereunder, and to any person, firm or corporation legally responsible for the operation thereof, provided such use or operation is with the permission of the named assured, or if the named assured is an individual, with the permission of an adult member of the named assured's household other than a *chauffuer* or a domestic servant."

It was shown that in the contract agreement the agents were forbidden to issue any policy to a negro or to races other than white, unless first authorized in writing so to do by the plaintiff.

The institution of the suit filed in Dallas county, the result thereof, and the payment of the judgment rendered therein by plaintiff by reason of the provision of the aforesaid policy, as alleged in plaintiff's petition, was supported by the evidence.

The court, upon the pleading of the plaintiff and the evidence adduced, rendered judgment overruling defendants' plea of privilege; from which judgment defendants have appealed.

As cause for a reversal of the judgment, appellants insist, first, that the court erred in holding that the written contract upon which plaintiff seeks to sustain venue over this cause in Galveston county is sufficient to deprive appellants of their privilege of being sued in the county of their residence, as claimed by them in their plea of privilege;

second, that there is no legal evidence to support the judgment retaining venue over this cause.

Under such contentions, appellants in effect argue that the agency contract, as a whole, does not constitute a contract in writing to pay such damages as appellee might suffer by reason of their breach of the agency contract in Galveston county, and therefore venue of this suit cannot be maintained over their plea of privilege under the provisions of subdivision 5 of article 1995, Revised Civil Statutes of 1925, which reads as follows: "If a person has contracted in writing to perform an obligation in a particular county, suit may be brought either in such county or where the defendant has his domicile," nor of any other statute.

We overrule appellant's contention. By the seventh paragraph of the agency contract, it is provided as follows: "All payments contemplated to be made by the agent to the Company under this agreement shall be made to the Company at its office in the City and County of Galveston, Texas, and any and all suits for any and every breach of said agreement may be instituted and maintained in any court of competent jurisdiction in Galveston County, Texas."

We agree with appellee in the contentions as follows:

"This seventh provision may be divided into two co-ordinate covenants mutually dependent and mutually explanatory:

"(1) All payments contemplated to be made by the agent to the Company are to be made in Galveston County; and,

"(2) All suits for any and every breach of agreement may be instituted and maintained in Galveston County, Texas.

"The first provision standing alone should be sufficient to maintain venue in Galveston County. Necessarily the parties to a contract contemplate that there will be an obligation upon the part of the party breaching the agreement to compensate the other. The very measure of damages for breach is damage within the contemplation of the parties. 17 C. J. 742, 743; Freeman v. Clark (Tex. Civ. App.) 177 S. W. 1188; Southwestern Telegraph & Telephone Co. v. Solomon, 54 Tex. Civ. App. 306, 117 S. W. 214.

"If there is any doubt that the defendants agreed to perform all obligations incurred by reason of breach of their agreement in Galveston, Galveston County, Texas, this doubt is dispelled by the second part of the seventh provision above quoted. This second part is explanatory of and co-ordinate with the first part and conclusively demonstrates that the 'payments contemplated to be made' include payments to be made by reason of each and every breach of the contract. This clause, in explanation of the preceding portion of the seventh paragraph, provided that any and all suits for any and every breach of the agreement might be instituted and maintained in Galveston County. This can only mean that the parties contemplated that the obligation to pay damages under the contract for breach thereof was performable in Galveston County, Texas. Such being the intent of the parties clearly ascertainable from their contract, in writing, venue in Galveston County is established by article 1995, subd. 5.

"The agreement contemplated acts by defendant in Kaufman County, Texas, and made obligations on their part performable in Galveston County. They were to make remittances to Galveston County, make report to Galveston County, make the payments contemplated in the contract and payments contemplated by reason of any breach of the contract, in Galveston County."

In 17 Corpus Juris, § 76, p. 742, it is said: "The damages to which one party to a contract is entitled because of a breach thereof by the other are such as arise naturally from the breach itself, or such as may reasonably be supposed to have been within the contemplation of the parties at the time of making the contract as a probable result of a breach thereof."

From the language used in the seventh paragraph of the agency contract in this case, it cannot reasonably be doubted that at the time of making the contract it was in the contemplation of the parties that a breach might result, and that as a result of such breach damage might flow. So we think it being contemplated by both parties that a breach might occur and result in damages, appellants agreed by the terms of the written contract to pay such damages in Galveston county. We are thus lead to the conclusion that the court properly maintained the suit under and by virtue of said subdivision 5 of article 1995.

The judgment is affirmed.

Affirmed.